# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

ROBERT L. HILL,

      Plaintiff,

                                                           Civil Action 2:18-cv-944
  v.                                              Judge George C. Smith
                                                    Magistrate Judge Jolson

JARED McGILTON, et al.

      Defendants.

## ORDER AND REPORT AND RECOMMENDATION

Robert L. Hill ("Plaintiff"), a prisoner in the custody of the State of Ohio, proceeding without the assistance of counsel, brings this 42 U.S.C. § 1983 action against Jared McGilton ("McGilton"), Hiatt ("Hiatt"), and Joel Burris ("Burris") (collectively "Defendants"), employees of the Noble Correctional Institution, for violating his Fifth and Fourteenth Amendment due process rights. (Doc. 1-1, PAGEID #: 7–8). This matter is before the Undersigned for consideration of Plaintiff's Motion for Leave to Proceed *in forma pauperis* (*see* Doc. 1) and the initial screen of Plaintiff's Complaint pursuant to 28 U.S.C. § 1915(e)(2).

Plaintiff's request to proceed *in forma pauperis* is **GRANTED**. All judicial officers who render services in this action shall do so as if the costs had been prepaid. 28 U.S.C. § 1915(a). However, having performed an initial screen and for the reasons which follow, it is **RECOMMENDED** that Plaintiff's claims be **DISMISSED**.

**I.     INITIAL SCREEN**

   **A.     Relevant Standard**

Plaintiff is a prisoner seeking redress from a government employee and therefore this Court must conduct an initial screening pursuant to 28 U.S.C. § 1915A(a). The Court must identify any "cognizable claims"; it must dismiss the complaint, however, if it is "frivolous, malicious, or fails to state a claim upon which relief may be granted" or seeks "monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). Complaints written by pro se litigants are held to "less stringent standards" than those drafted by lawyers. *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991); *accord Haines v. Kerner*, 404 U.S. 519, 520 (1972). Despite liberal construction, pro se litigant's complaint "still must set forth a cognizable federal claim." *Thompson v. Kentucky*, No. 86-5765, 1987 WL 36634, at *1 (6th Cir. 1987) (citation omitted).

   **B.     Plaintiff's Complaint**

Plaintiff is an inmate in the custody of the State of Ohio, presently incarcerated at the Lebanon Correctional Institution ("LeCI") in Lebanon, Ohio. Plaintiff filed a 42 U.S.C. § 1983 complaint in regard to what he alleges were violations of his Due Process rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, while he was incarcerated at Noble Correctional Institution ("NCI"). (*See generally* Doc. 1-1).

The complaint alleges Defendants (1) wrote false statements in a conduct report, (2) made false statements before the Rules Infraction Board ("RIB"), and (3) presented no evidence during

the RIB hearing. (*Id*., PAGEID #: 8). Specific to Hiatt, Plaintiff claims that he (or she) denied Plaintiff's request to call a fellow prisoner as his witness at the RIB hearing. (*Id*., PAGEID #: 8). As to Burris, Plaintiff claims Burris denied him a "meaningful appeal." (*Id*.). All claims stem from Plaintiff's involvement to smuggle and distribute Suboxone at NCI.

Plaintiff was incarcerated at NCI beginning on or around December 2011, where he worked in the prison's law library. (*Id*., PAGEID #: 9). Sometime during Summer 2016, Plaintiff met Adam Poulton ("Poulton"), another inmate at NCI, who approached Plaintiff for assistance in the law library. (*Id*.). On June 6, 2018, prison officials detained Plaintiff and placed him in a holding cell in the segregation unit. (*Id*.). Plaintiff was accused of being involved in a scheme to convey Suboxone into NCI. (*Id*., Ex. A., PAGEID #: 22).

The Conduct Report specifically states that another prisoner, Poulton, "was coordinating the conveyance, distribution, and sales of illegal drugs for profit within NCI." (*Id*.). The report supplement gives further detail, implicating Plaintiff: "Poulton was observed in the law library . . . with individuals involved in the illegal drug operation . . . [who] assisted by collection of, conveyance of, hiding, holding, and dealing the illegal drugs, to include collection of monies." (*Id*., Ex. A., PAGEID #: 23). Those implicated included, among others, "Hill A614862," who "played a different role in the conveyance network." (*Id*.). According to an additional Conduct Report Supplement, Plaintiff "would not only assist inmate Poulton in hiding large quantities of Suboxone" but would also "facilitate meetings of individuals involved in the conveyance network." (*Id*., Ex. A., PAGEID #: 24). There was then a hearing before the RIB, but the record is devoid of any report, hearing transcript, or documentation of the RIB hearing. (*Id*., PAGEID #: 10).

3

At the hearing, according to Plaintiff's complaint, he attempted to call Poulton as a witness, but was denied by Hiatt because Poulton was involved in the drug smuggling scheme. (*Id.*). Plaintiff claims, by way of an affidavit signed by Poulton, that he was not involved in the Suboxone smuggling scheme. (*Id.*, Ex. F, PAGEID #: 43–45). The affidavit, however, was sworn to and subscribed after the RIB hearing. (*Id.*, Ex. F, PAGEID #: 45). Plaintiff ultimately was found in violation of Rule 40 of the Inmate Rules of Conduct. *See* O.A.C. § 5120–9–06(C)(40) ("Procuring or attempting to procure, unauthorized drugs; aiding, soliciting, or collaborating with another to procure unauthorized drugs or to introduce unauthorized drugs into a correctional facility."); *see also* (Doc. 1–1, PAGEID #: 11). The RIB recommendation for Plaintiff was two weeks in restrictive housing, an increase in his security level from Level 1 to Level 3, and confiscation of his "Timberland work boots." (*Id.*). Plaintiff filed an administrative appeal within the prison. (*Id.*, Ex. G, PAGEID #: 46).

On appeal, Plaintiff argued there was no evidence in the Conduct Report implicating him in the smuggling operation and that his due process rights were violated when his witness was disallowed. (*Id.*, PAGEID #: 11–13). The appeal was denied. (*Id.*, Ex. H, PAGEID #: 47). Plaintiff's security level was raised to Level 3, and because NCI is only a Level 1 and Level 2 facility, he was transferred to LeCI. (*Id.*, Ex. G, PAGEID #: 46). This transfer resulted in a revocation of certain privileges enjoyed at NCI. (*Id.*, PAGEID #: 13).

Plaintiff then filed the instant action for relief, alleging Fifth and Fourteenth Amendment Due Process Clause violations based on the above.

### C. Discussion

Plaintiff asserts various 42 U.S.C. § 1983 claims against the Defendants for violating his Due Process rights under the Fifth and Fourteenth Amendments to the United States Constitution.

4

To sufficiently plead a cause of action under 42 U.S.C. § 1983, a plaintiff must plead two elements: "(1) a deprivation of a right secured by the Constitution or law of the United States (2) caused by a person acting under color of state law." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008). Plaintiff has failed to meet this standard for any of his claims.

### 1. Due Process at the RIB Hearing

The Due Process Clause protects individuals against deprivation of "life, liberty, or property without due process of law." U.S. CONST. amends. V, XIV. Prisoners subject to disciplinary proceedings, however, are not entitled to the same "full panoply" of due process rights afforded to criminal defendants during trial. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). For a valid claim, the due process violation must impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). "The 'manner in which' (or process by which) [a] plaintiff lost his interest is considered only to the extent that the interest is constitutionally protected." *Williams v. Wilkinson*, 51 F. App'x 553, 556 (6th Cir. 2002). Even if an administrative chairperson wrongly denies the prisoner's request, "failing to follow proper procedures is insufficient to establish an infringement of a liberty interest." *Grinter v. Knight*, 532 F.3d 567, 574 (6th Cir. 2008) (quotations omitted). Importantly, the Due Process Clause does not protect every procedural aspect of a prisoner's life. *See id.*

According to the relevant Ohio Administrative Code, when a prisoner goes before RIB, the "panel *may* hear testimony from witnesses." O.A.C. § 5120–9–08(F) (emphasis added). The Sixth Circuit has made clear that this does not mean that a prisoner has "an absolute right to present witnesses at a disciplinary hearing." *Doss v. Maki*, No. 17-1660, 2018 U.S. App. LEXIS 19638 (6th Cir. 2018). Indeed, excluding witnesses and limiting testimony is permitted to avoid

5

disruption or interference with the prison's correctional obligations. *See Wolff*, 418 U.S. at 566 ("[T]he unrestricted right to call witnesses from the prison population carries obvious potential for disruption and for interference with the swift punishment [which] may be essential to carrying out the correctional program of the institution."). Calling a witness who poses a threat to the safety of the correctional institution satisfies this standard. *See* O.A.C. § 5120-9-08(E)(3).

Disciplinary violations "constitute an immediate and direct threat to the security . . . of the institution." O.A.C. § 5120-9-06(A). Procuring, distributing, possessing, or manufacturing drugs inside the prison implicates an immediate and direct security interest. *See* O.A.C. §§ 5120-9-06(C)(39)–(40). Based on this security interest, "[t]he RIB chairperson may deny a witness request" by an inmate during a disciplinary hearing. O.A.C. § 5120-9-08(E)(3). This does not create an atypical or significant hardship. *See Johnson v. Moore*, 7 F. App'x 382, 384 (6th Cir. 2001) (holding that "being denied a witness" does not indicate a prisoner "suffered a hardship that is either atypical or significant.") (quotation omitted). Such is the case with Plaintiff's RIB hearing.

Here, Plaintiff wished to call a witness who was also implicated in the drug smuggling operation within NCI. (Doc. 1–1, PAGEID #: 10). The RIB chairperson determined calling this person would create a security risk, and therefore denied Plaintiff's witness request. (*Id.*, Ex. A., PAGEID #: 23–24). This denial does not implicate a protected liberty interest because it is neither "atypical" nor a "significant hardship." *Sandin*, 515 U.S. at 484. Therefore, as to his claim that he was denied due process during the RIB hearing, Plaintiff has failed to state a claim upon which relief can be granted.

## 2. Disciplinary Action Resulting from RIB Hearing

Due Process rights may be implicated by deprivation of liberty, effectuated by disciplinary action within the prison. However, disciplinary action must inflict an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" to implicate a cognizable claim. *Sandin*, 515 U.S. at 484. Certain administrative actions can be "atypical and significant," triggering a protected liberty interest. *See Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (transfer Ohio's "super-max" Level 5 prison created a liberty interest); *Harden–Bey v. Rutter*, 524 F.3d 789, 792 (6th Cir. 2008) (indefinite confinement in administrative segregation may create a liberty interest). Many incidents of prison life, however, do not implicate a right by the Due Process Clause. *See Wolff*, 418 U.S. at 556.

And, relevant here, a prisoner does not have liberty interest in not being transferred to other prisons, so long as the transfer does not "present a dramatic departure" from the inmate's original sentence. *Wilkinson*, 545 U.S. at 221–22; *see also Meachum v. Fano*, 427 U.S. 215, 223–24 (1976) (no liberty interest in prisoners not being transferred to other prisons); *Thompson v. Oppy*, No. 1:15-CV-621, 2017 WL 6154402 (S.D. Ohio Dec. 8, 2017) ("It is well established that no liberty interest is implicated in a transfer from a low-to maximum-security prison because confinement in any of the State's institutions is within the normal limits or range of custody of which the conviction has authorized the State to impose." (quotation and citation omitted)); *Guile*, 521 F. App'x at 544 (noting that "simple transfer . . . [to] a higher security classification does not trigger a liberty interest").

In most circumstances, only transfer to the Ohio State Penitentiary, a Level 5 "Supermax" prison, creates a liberty interest. *See Wilkinson*, 545 U.S. at 223; *Humphrey v. Turner*, No. 1:15–CV–484, 2015 WL 4999245 (S.D. Ohio July 30, 2015) (holding that transfer to a Level 4 prison

was not atypical or significant enough to create a liberty interest because the conditions there did not "approach the extreme conditions of Ohio's Supermax prison."). Similarly, an inmate does not have a protected liberty interest in their assigned security level. *See, e.g.*, *Beard v. Livesay*, 798 F.2d 874, 875 (6th Cir. 1986) ("A prisoner has no inherent constitutional right . . . to enjoy a particular security classification." (citing *Moody v. Daggett*, 429 U.S. 78 (1976) and *Montanye v. Haynes*, 427 U.S. 236, 242 (1976)).

The same is true for a revocation of privileges because the revocation of privileges does not create a protected liberty interest. *See, e.g.*, *Thompson v. Thompson*, No. 96–6352, 1998 WL 211775, *1 (6th Cir. 1998) ("[Prisoner's] removal from the work release program was not an atypical and significant hardship because he has no right to prison employment." (citing *Sandin*, 515 U.S. at 483)); *accord Etheridge v. Adams*, No. 5:05–CV–P197 R., 2005 WL 3307093 (W.D. Ken. Dec. 1, 2005) ("[T]he Sixth Circuit Court of Appeals has specifically held that the Fourteenth Amendment's Due Process Clause does not create a protected liberty interest in participating in prison employment.").

Here, Plaintiff has not suffered any atypical or a significant hardship, compared to the ordinary life of an inmate. He has no liberty interest in his security status, nor does he have a liberty interest in that level changing. *See Beard*, 798 F.2d at 875. Further, Plaintiff's subsequent transfer from NCI, a Level 1/Level 2 facility, to LeCI, a Level 3 facility, does not implicate a protected liberty interest. (Doc. 1–1, Ex. G, PAGEID #: 46). *See Guile*, 521 F. App'x at 544. Additionally, Plaintiff's employment in the NCI law library—and subsequent revocation of that privilege due to his transfer—does not implicate a protected liberty interest. *See Thompson*, 1998 WL 211775, at*1. In sum, Plaintiff's allegation that his transfer, security level change, and loss of privileges violated his due process rights fails to state a claim upon which relief can be granted.

### C. "Meaningful" Appeal

An inmate can appeal a RIB decision, so long as he or she does so within fifteen days of receiving the panel's disposition. *See* O.A.C. § 5120–9–08(O). Then, within 30 days, the RIB's managing officer or designee must decide the appeal and notify the inmate of the decision. *Id.* at § 5120–9–08(O)(3). Based on the documents in the complaint, there is nothing to support Plaintiff's claim that his appeal was not handled properly or in a timely manner.

Prison officials complied with the necessary requirements set by the Ohio Administrative Code in dealing with Plaintiff's appeal. Plaintiff filed a Notice of Appeal Security Level/Transfer Recommendation objection on June 18, 2018, relating to his June 13, 2018 RIB Hearing. *See* (Doc. 1–1, Ex. G, PAGEID #: 46). The appeal was denied on July 1, 2018, well within the thirty-day timeframe provided by the Ohio Administrative Code. (*See id.*, Ex. H, PAGEID #: 47). In the decision of appeal, C. Aufdenkampe "review[ed] the totality of circumstances surrounding [Plaintiff's] behavior here at NCI" and determined Plaintiff should not remain at a Level 2 institution. *Id.* Further, the decision indicated Plaintiff did not provide "any evidence" that his security documents were completed incorrectly. Nor has Plaintiff provided any evidence which could substantiate a claim that the appeal did not receive meaningful review, other than he wishes it reached a different outcome. Consequently, Plaintiff has no due process claim against Burris regarding the RIB panel appeal or its process.

## II. CONCLUSION

For the reasons stated, the Undersigned **RECOMMENDS** Plaintiff's complaint be **DISMISSED** in its entirety pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

**Procedure on Objections**

If any party objects to this Order and Report and Recommendation, that party may, within fourteen (14) days of the date of this Report file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence, or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*. Failure to object to the Report and Recommendation will result in a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.


Date: October 11, 2018                     /s/ Kimberly A. Jolson
                                           KIMBERLY A. JOLSON
                                           UNITED STATES MAGISTRATE JUDGE